Company. Ms. Post. Good morning, Your Honors. May it please the Court, my name is Christy Post. I'm with the Blake Jones Law Firm. I'm here to talk about my client, Mr. Johnson's case and the applicability of the Court's recent ruling in the Sanchez matter and how the District Court, we believe, misapplied it in the context of Mr. Johnson's case. Mr. Johnson is a person who performs traditionally longshore-type activity work. However, he does so and did so for Cooper for many, many years in a midstream context. Now, that's very different from the dockside type of work that was being performed in the Sanchez case. The function and mission of the America, which is the vessel that he was working on that's owned by Cooper, is to sit midstream so that barges coming from upriver can be offloaded onto ships going out to sea to facilitate the movement of cargo for Cooper in terms of to expedite that and for his customers to facilitate the movement of their cargo without having to go dockside, as they formerly did and some still do. So Mr. Johnson, every day, would be taken from the dock, transported by crew boat, to the America. From there, he would be told which barges were being unloaded to which ships on that particular day. Mr. Johnson did this for Cooper for a period of almost 20 years. Cooper alleges that because he was hired out of the Union Hall, that he's a longshore worker and that his employment was terminated every single day and that he would be rehired the following day. So over 20 years, if you do the math, that's over 7,000 times being hired and fired. The function and mission of the America, as I just alluded to, is to transfer cargo. Now, in doing so, Mr. Johnson's work is that he would get onto the barges, he would assist the crane operator from the America to hook up rigging to the covers. They pick up these large covers, place them on the America, and then they lower equipment down into the holds of the barges and workers like Mr. Johnson would go in there and move this bulk cargo with front loaders and other those particular jobs. They would then have to raise the equipment, remove everything from the hatches, and replace the covers. So Mr. Johnson's injury took place when they had completed the removal of the cargo and they climbed up, he and another gentleman, out of the hold and they had to remove a large aluminum extension type ladder that was part of the equipment, as was all the rest of this, off the America, Cooper's Vessel. And in doing so, they had to raise this ladder up over their heads to place it in a notch on the America. At that point, Mr. Johnson lost his balance and fell and suffered some very severe injuries to which now, almost five years later, he's never been able to do so. How does the posture of the case help us apply the Sanchez factors or said differently? is this case turning on facts or is it turning on how we apply Sanchez to these facts or is it a mixture that's one question and then secondly the district court made some facts in favor of your client and then that question would be is it enough just your client's deposition factually to push back against you know the other view of it or was more needed is there more available or is what the record is the record is I know that's convoluted way to stream no pun intended on you know where where the tension looks yes your honor and I think that's a an excellent point and I think that what the district court did was from the very get-go misapplied Sanchez because I think the district judge in finding or buying into the Pele's argument that Mr. Johnson was attached to all these other customers vessels rather than to the America is where the basic problem began in this particular decision so in finding that there's no proof he was a crew member of the America or more or less permanently assigned to the America is where I believe you start with the process and there was ample information evidence in the deposition that he went to the America every day he performed operations using its appurtenances I don't think that it's conceivable to believe that he's not just as much a person who is furthering the function and mission of the America is anyone else say a crane operator he's acting as a flag man he's performing the actual function or mission of the America which is to move cargo just as much as any other captain or anyone else perhaps even more so in my opinion and then if you look at at that that's where the whole problem began in the district court's opinion so the district court failed to recognize this man's connection to the America itself and instead bought into Cooper's argument that he's being attached each day to multiple vessels in furtherance of their missions I don't see how that's even possible there's no real evidence of that it's simply an argument that was made by Cooper's counsel who picked him up every day Cooper Cooper picked him up he was hired out of the Longshore Hall he reported dockside and he was taken by Cooper every day to and from their vessel the America and I just there's no proof that they had any arrangement with any of these customers either the barge owners or the seagoing ships to assign workers to work in their employ there's simply no evidence of this the barges that are coming in they don't even have a crew thought the seagoing ships do but the barges do not so that's part of the whole problem and if you go further along in in Sanchez so first of all you know does the worker owe allegiance to a vessel or a shoreside employer in this case they're one in the same because the vessel is the America the vessel in question that he's attached to is not all of these other things that are coming and going the America is constant mr. Johnson is a constant the ships and the barges come and go day in and day out they change the customers change the employers change the one thing that doesn't change is that that's the vessel he's going to every single day so that's kind of where the the district court started and then then when they got into the sea base activity and and finding that it was he was performing discreet activities to these other vessels and the connection ends he never has a connection to the other vessels that's the whole point his connection is to the America he is a crew member you can call him a longshoreman or say that he did traditional longshoremen work but the fact of the matter is is he's assigned to a vessel and they cannot by virtue of the fact that they have some arrangement through a collective bargaining agreement with the Longshore Union make up their mind that legally he's going to be determined a statement that's for this court to decide what's the quality of the summary judgment evidence on the point you're making well in the in mr. Johnson's deposition he testified that he was always taken by crew boat to the vessel day after day after day and that he performed all of his work at the direction of Cooper employees they focused and their argument and the district court seemed to he identified as a longshoreman he said he was a member of the Union all of those things are true but when an employer takes the very essence and the location of where that work is being performed and they for their own benefit transfer those workers from a shoreside environment to a maritime environment over water then they're changing the character of the employment itself so evidence from Cooper's side that supports mr. Johnson's deposition well their own affidavits that they submitted they they agree that the Americas a vessel I don't think there's any dispute that he went there every day what they claim is that he simply was going there to receive assignments of which vessels to go to but there's really no option of which vessels to go to because you have a barge being unloaded and a ship being loaded if you were simply going to assignments to some other vessels that weren't attached to the America that could be done from shoreside so he's really working off the America he's using the Americas equipment all of the front loaders and everything else are all on the America they are all appurtenances of the America and that's the equipment he's using what would we be holding that the district court construed that evidence against the non-movement I'm still in my summary judgment mindset you know this having been a trial you know so I'm just trying to take what you're saying and put it in the summary judgment argument that the district court construed the evidence on this point against the non-movement that that's the basis of the era or what just trying to understand you know whether you are yes your honor that on the facts or what yes on the facts he's clearly attached to the America to into this convoluted argument that he is hired and fired every day and and assigned to or employed by all of these different customers day after day after day it's just an implausible argument and I'm not sure why the the court didn't find that they also the court said that we failed to prove the duration element that he didn't work more than 30% of his time on vessels but by the very nature of the midstream context of the work that he was performing he was performing 100% of his work in a maritime context on a vessel the problem is that the district court was looking at it in terms of all of the customers vessels and not the actual vessel that he was attached to we think it was very clear on the record that that's you know that is his employers vessel that's who he was working for and that's where he went every single day day in and day out it's no different than if you take a cook from a restaurant a cook cooking in a restaurant on land is a land-based employee but if you hired that cook and you put him out on the America and he's cooking out there well he's not a land-based employee anymore he may be doing the same work that he did on land but now he's a maritime worker and in that case attached to a vessel he's the Jones ex-seaman and it's no different for mr. Johnson who is a traditional land-based type worker because most longshore work is done in a land-based context dockside and you transfer if you will you're bringing the dock to the middle of the river which is what is done in midstream operations by putting a vessel in the middle of the river to perform the same function that the dock would serve if it were dockside but when you expose those workers and you move them into that context you are taking them from one status and placing them into another from a longshoreman job into a Jones ex-seaman job so that's basically our argument I have about a minute left but I'll unless the court has any other questions what's your best case post Sanchez of where your client fits in well I think that he fits in one of the other issues when I read Sanchez and I'm not quite sure the courts why Sanchez was a case that was picked by the court because to me it seemed very clear that he did not fit the definition but tweaking the nature element of Chandra's the way that the court did in Sanchez I'm not sure the sea based or involving seagoing activity how close you know are we getting with these dockside type employees you know is the court overruling the Endeavor Marine and NACAN cases where the court recognized that exposure to the Mississippi River is perils of the sea and that the court rejected the assumption that my best case is that my guy is a seaman because he's connected to the America let me ask because what you said confused me a little bit without Sanchez where would you be I think my client is clearly a Jones ex-seaman without Sanchez okay so your best case is pre Sanchez yes and I not believe post Sanchez he still should be a Jones ex-seaman I think that the the failure or the the disconnect in this case was the district court looking at my client not in terms of his connection with the America his employers vessel but with all of the vessels that come and go day in and day out thank you very much may you please the court good morning your honors Jason Wagusback Galloway Johnson Tompkins Burns Smith on behalf of the appellee Cooper T Smith Steve Doran company the district court in this case in granting summary judgment in favor of Cooper on the appellants Jones act status and 905 B claims emphasized over and over again the appellants failure to come forward with any evidence whatsoever to support his arguments on either claim the appellant has the burden of proof on both of these claims and it was his duty to satisfy that burden with evidence produced in response to defendants motion for summary judgment he did not do so this lack of evidence comes in fact in spite of the in spite of the fact that the case was pending for over a year before Cooper filed promotion follows motion for summary judgment and the trial was set to go in little over a month when summary judgment was entered there was ample time for the plan to develop evidence to support his arguments on both Jones act status and 905 B but was never able to develop the evidence because it simply is not there he has no evidence in the record to support his arguments that the district court was was incorrect there's argument to be sure but there's no evidence this court has repeatedly held that a party moving for summary judgment may satisfy his burden by merely pointing out that the evidence in the record is insufficient with respect to an essential part of the non-moving parties claim on which the non-moving party has the burden of proof at trial why isn't his deposition why isn't his deposition sufficient for summary judgment purposes in terms of you know teeing up this issue the various issues is absolutely sufficient your honor the problem for the appellant is that his summary judgment testimony supports the fact that he's not a Jones act seaman and I'll address that in just a minute but no the deposition is is ample evidence and in fact that was what the district court was looking at the plaintiff's deposition and the declaration of James Gautreaux submitted by Cooper and in looking at both those things the district court found and by the way the entire deposition transcript is in the record so the court had the entire testimony of the plaintiff and the district court said it was wholly insufficient to carry the plaintiff's burden I would go a step further and say it was actually evidence that the plaintiff was not a Jones act seaman so the district court recognized this lack of evidence and correctly granted summary judgment to Cooper and we asked this court to affirm I'd like to address now the appellant's specific arguments on Jones act status the parties are in agreement that the applicable test is Sondra's papaya and in this court's recent decision in Sanchez and that test is does the worker contribute to the function or of a vessel or the accomplishment of his mission that is not on appeal today but the second element is is the worker employed on a particular vessel in navigation or a fleet of vessels under common ownership that is substantial in both nature and duration this court's recent decision in Sanchez instructs us that the analysis of these factors and particularly the nature factor should be rigorous to determine if an individual is truly a Jones act seaman as opposed to a longshoreman or another type of maritime worker it is not enough that the maritime workers confronted with the perils of the sea there must be a substantial enduring relationship to a vessel under both Sondra's and Sanchez and then when we applied this test to the evidence before the district court and before this court today it's clear that mr. Johnson is not a Jones act seaman so we look at the duration test mr. Johnson argues before this court that he was a member of the crew of the America and that he spent a hundred percent of his time working on that vessel that's not what the evidence is in the record to give you some context the America is a floating weight station is moored midstream in the Mississippi River near Darrow ocean one vessels pull up alongside it and then barges come on underneath it and there's a bucket dredge that or I'm sorry bucket crane that then unloads the barges and puts it into the into the ocean one vessel this crane is operated by a Cooper who is a member of the crew of the America the America does have crew members assigned to it on a permanent basis that that operate the equipment that's on that vessel but to aid in the loading and unloading of the ocean one vessels and grain barges Cooper also hires longshoremen from the local longshore union they're hired daily for each shift and then they're terminated at the end of that shift and they go home this isn't done as some sort of payroll machination or way to avoid legal liability this is the deal this is the agreement that Cooper has with the longshore union and the reason why it's there is because the union members are free to work each day for the several different stevedore and operations on the river and in fact mr. Johnson confirmed in his deposition that he worked for multiple stevedore and companies along the river and that's found in the record at 175 to 176 as well as 178 and 193 in his deposition testimony this is important mr. Johnson never claimed to be a member of the crew of the America as asserted here today nor did he testify that he ever even worked on the America his testimony was that was that his job title on the day of the accident was the operator of a front-end loader and that required him to operate equipment in the grain barges so he could move the grain around so it could be discharged here he would be brought to the America on a crew boat but he didn't perform any of his job functions on the America he basically he testified and this is his testimony he used the America basically as a platform to get to his work sites aboard the ocean one vessels and the grain barges and that's in the record at five I'm sorry two five two and I have to stretch here that when asked specifically when you were working for Cooper are you working on the America he answered no and that's in the record at 251 mr. Johnson was truthful when he confirmed that his work was not on the America his connection to that vessel was transitory at best the fact that he was not a member of the crew nor ever worked on the America is conformed is confirmed by the sworn declaration of James Gautreaux which is in the record at 87 through 90 now the plaintiff attempts in in the brief to twist mr. Grosz shows testimony to state that a hundred percent of his employment was over water that's not the testimony but it doesn't matter Cooper picks him up takes him out there he's paid I'm not sure Cooper pays him directly or Cooper Cooper pays him through the Union yes no no Cooper is paying him that's correct going back to the testimony that his employment was over water I'm sorry the argument not the testimony of the argument that his employment was over water the percentage of time that a worker spends over water is not the duration test as noted by the Supreme Court in Sandra's and by this court in Sanchez a maritime worker who unmistakably confronts the perils of the sea often in extreme form may still not be a seaman if there's not a substantial enduring connection to a particular vessel or to a fleet of vessels under common ownership the duration test is the percentage of time that a worker is employed aboard a particular vessel in navigation or a fleet of vessel under common ownership the evidence even mr. Johnson's own testimony establishes that mr. Johnson never worked aboard the America the vessel to which he claims an employment connection all of his work over water was on barges or an ocean going vessels none of which as confirmed by mr. Gautreaux were owned by Cooper we have been unable to find any case and the appellant does not cite a case that stands for the proposition that is being advanced here today which is that a worker may be a member of a crew of a vessel on which the vet the worker performs no work what the plaintiff is asking this court to do is unprecedented and would greatly broaden those workers eligible for Jones act status rather than narrow the field which was the intent of Sanchez the district court was clearly correct correct in holding that mr. Johnson did not satisfy his burden approving duration under the Chandra's test and that I'm sorry you saying the barges are not the barges are vessels what I'm saying is that the test is that it has to be an employment connection to a particular vessel or to a fleet of vessels under common ownership what the appellant is argument is that is arguing is that his connection was to the America what we are saying is he doesn't meet the duration aspect of that because he didn't spend at least for 30% of his time working on the America he spent no time either on a barge or a seagoing vessel exactly 100% of his time on a seagoing vessel you're just saying it's not the America he's been 100% of his time as far as we know and on the record and either the barges or the seagoing both of which you say our vessels but the problem is that they're not under common ownership so that they fail the common ownership aspect of the Chandra's test so you can spend a hundred percent of your time on a vessel but if they're not under common ownership or if it isn't one particular vessel you don't meet the duration element of the other Chandra's test so he should be sitting the owner of the of these vessels of the vessel he was on the day he was injured at your position now our position is that he's covered in a longshore and harbors conversation act if he's no your honor what makes him a seaman is if he meets the test for seaman status under Chandra's there there are plenty of workers that you might think of as seaman because they're working on vessels for example a pilot piloting a river up and down the Mississippi River those individuals are not Jones act seaman and the reason why is because they don't have a connection to any or several categories of workers longshoremen being one of them who do not qualify for Jones like seaman status under the current test is given to us by the Supreme Court well you said that the America did have permanent persons who were fixed or that's correct your honor that's a great question your honor the way that they're different is that the crew of the America actually stayed full-time upon the America performed all their work on the America when the America shifted in the river from one mile marker to other they rode on the America and that that was their permanently assigned vessel they did not use the America simply as a platform to get to their work site it was their work site mr. Johnson in contrast would go what would happen is Cooper would go to the Union Yard they would do a muster they would tell the longshoremen where they needed to go it may be the America it may be someplace else but then but if it were the America mr. Johnson would go to the America cross over it and then get into the barges and that's where he performed his work there were different barges each time all under different ownership he could also go on the ocean one vessel if he was operating as a flagger their job is usually on the vessel itself the ocean one vessel the ship but again these were all ships these were all vessels that were not under common ownership it was a different ship each time but what makes him different from the crew of the America was that he was performing none of his job functions on the America he was using that vessel merely as a platform and that that again is his own testimony in the record if I may briefly address the nature prong of the of the Jones act status because we have to look at both duration in nature and the second element is you know whether he had an employment connection to a vessel again a particular vessel or a fleet of vessel that was substantial in nature under Sanchez this court specifically rejected the peril to see inquiry as the sole or instead there there are four factors that this court set out so I'd like to go to each one of them briefly the first one is does the worker owe his allegiance to the vessel or to a shoreside employee I'm sorry employer and I think that is clear here that the allegiance is to the shoreside employer which is Cooper who hired him each day who paid him either directly or through the Union and who sent him out to do his longshore job as set out in my earlier argument there's particular any allegiance to any particular vessel and he certainly didn't testify that he did all of his work was aboard different vessels under different ownership mr. Johnson cannot and did not carry his burden of proof from this element the second element is is the work sea-based or in going involved seagoing activity there's no evidence that mr. Johnson was ever required to sail with the barges or the ocean long vessels or to go out at sea our best case on this issue since miss post was asked about her best case I believe our best case on this issue was a recently decided case called Moe versus Cooper consolidated out of the eastern district of Louisiana the site is 601 Feds up third 38 and in that case judge ash said I'm looking at a very similar situation held that the work also Cooper employee a longshoreman working for Cooper held that the individual worker was not a Jones like seaman he performed very similar job functions as mr. Johnson he did it in a midstream environment but judge ash and that I'm sorry yes judge ash in that case found that mr. bow did not go out to sea and therefore did not meet the second element of the nature analysis and then finally the third one is the workers assignment to a vessel limited to a performance of a discrete task or does the worker sail with the vessel port to port location location here the connection to the vessel that he had was the connection to the barges he went into the holes of the barges he helped discharge that and then he left went home for the day which was his landsat home he performed clearly a discrete task and after that his connection to the vessel ended and then the final factor which is still relevant is does the worker is the worker exposed to the perils of the sea this does remain a factor to consider on the Sanchez but it wasn't a briefed in the plaintiff's brief one appeal and therefore that burden has not been carried considering all of this mr. Johnson has not carried his burden that he meets a substantial element nature of the Jones Act status test and we would ask that the district court its judgment on this issue be confirmed I have a few more minutes and so I'd like to address the 905 B aspect of the claim unless your honors have any more questions about Jones X status well just one follow-up yes what case you cite I know what you're saying about his connection these other employees on the vessel they're there permanently whatever whatever is there a case that says his sort of hybrid category the cumulative could not satisfy the duration I mean isn't either or I get your argument he's different from the others who are permanent but I do understand your honor there is no Fifth Circuit case I'm aware of post Sanchez that makes their distinction that distinction there are several district court cases there is judge ashes case the mo case that I just cited there's a case out of the middle district called Blanda which was decided by judge DeGravelis which is cited in the briefs there's a third case the second say it's also called Sanchez but it's not the same one Sanchez versus American Petroleum I believe it was a judge Barbier case out of the Eastern District it's also cited in the pre Sanchez well pre Sanchez I there are several cases that are pre Sanchez that talk about longshoremen in the context of you know do they meet the nature element of the of the Chandra's test but in those cases and and I don't have any to cite to you off the top my head judge Richmond but those cases were operating on the on the on the nature side they were operating under a lesser standard because pre Sanchez the standard only was is the worker exposed to the peril of perils of the sea one of the reasons why this court on block decided Sanchez was because it found that that singular inquiry was insufficient to determine semen status because it was not in accordance with Sondra's or papaya and that's the reason why Sanchez was decided overruling some of those previous cases and in saying for the more stringent elements that you find found now in Sanchez which are the four L is now for element test as opposed to a single element test but in response to your specific question I don't have a case to cite to you that that specifically considers this issue pre Sanchez it Sanchez gives you know a list of factors is it the upshot a balancing of you know a weighing of those factors so to speak every case different you heard my question about summary judgment so if it's a weighing balancing in this context and given the non-movement taking what you say is true but but is it dicey in this summary judgment context or is it you understand well as a matter of law no matter what the facts are he's not a scene it's a great question judge Stewart in some of those and judge Barbier kind of struggled with this idea or the four elements set out by Sanchez mandatory in other words do you have to take each one of them in order to be to meet the nature element or are they weighing factors I believe judge ash at his mo decision weighed them and and judge de gravelous and judge Barbier didn't have to really decide that issue because the worker in that in those two cases ticked off for those elements I believe that it is a weighing test that that is not necessary to meet all of those elements that instead the district court may weigh the evidence and make that decision but also believe that the evidence in front of the court the district court and in front of this court today in this record does not support Jones act status either on the nature or the duration aspect in that in that respect I believe the district court correctly decided this issue I only have about 20 seconds left so I would just say I would also ask the court in looking at whether or not the 905 be elements have been met to we would just rest on our brief there but we do not believe there's only two duties that the plaintiff alleges that we that we violated the turnover duty and then the control duty but the important thing there is that there is no evidence there's no argument that there was ever defect on the vessel to support either in by the vessel I mean the America to support either I'm I'm a Thomas up thank you I think that Mr. Johnson is clearly one of these types of employees who falls within this sort of zone of uncertainty but if you look back at chandra's what is the real connection does it say you have to be on a vessel all of the time no it says you have to contribute to the function of the vessel or the accomplishment of its mission and have a relationship that is substantial in terms of duration in nature I would submit to you Mr. Johnson contributes to the function or mission of the vessel as does not transit it is not moved all of the time so these crew members that they admit that they have are not really performing a whole lot of additional functions anyway Mr. Johnson is not on the America when it's moved which there's no evidence in the record of how often it's moved or how it's moved he is sort of a hybrid employee and that's what going out into the middle of the river he mentioned pilots pilots are transitory their relation to vessels is something they get off one they get on one and I would submit to you that Mr. Johnson's relation to the barges and the ships is which transitory his relation to the America is what's constant and the fact that he's hired as what they term in their brief they have 406 versus non 406 employees and regular crew members versus these day workers you can call them whatever you want but when you're taking them out on a vessel to a vessel and exposing them to the perils of the sea then they're a seaman how far responds to opposing counsel saying that Mr. Johnson's own testimony says that he only used the America as a platform and that he did not work actually on that vessel well no one is really doing the work or the mission of the vessel from the vessel because the very mission of and job of the America is to provide a location from which to move things from the other vessels that are more that was evidence of what you're arguing now submitted in response to the summary judgment motion yes it's in in my client's deposition which is all in the record is exactly what he did all of the equipment and everything when they go out to the America that's used to load and unload the barges and the ships comes from the America the only person on the America physically participating in the operation of what they deem their regular crew would be the crane operator because he's got to pick up and move these covers and move all of the equipment and the employees like my client they're on the America but then they're on the barges and on the ship rigging and doing these other things it's no different from a towboat that has barges that it's moving up or down the river the deckhands on the barges they're out working on the tow all the time does it mean they're not connected to the towboat of course not does it mean they're not a crew member of course not they're using their main boats equipment to go out and do work and to pick up barges and drop off barges so it's really very much the same thing they may be performing the work on other vessels but the vessel they're attached to the vessel they go to every day that is a constant and it's no different in mr. Johnson's case except for the America's not going up and down the river like a towboat it had but a towboats picking up different barges and dropping off barges all the time and its crew goes and works on those for the vast majority of the time that's what they're there to do so it's really not any different at all the duration the time spent on the vessel again it's the furtherance of the mission of the vessel and the contribution to the function and mission of the vessel it's not that you're on the vessel all the time if it were then that these deckhands in my example they wouldn't be Jones X seamen either and we all know that else is in the record on these points besides mr. Johnson's deposition just give me a one two three four what it's really just his deposition and the affidavit that was submitted I think there are two affidavits submitted by the appellee in there was opposition to the summary judgment there is no other evidence he did what he did but you're conceding that the deckhands on the America are Jones X semen yes they are of course all of the regular crew on on any vessel or Jones X semen but you have supplemental type crew members or these hybrid crew members to use judge Stewart's word that are like mr. Johnson who may perform jobs on other things but they're still that's their vessel and again I get back to my my towboat analogy or vessels that do fleet work in the river people work on the fleet boat but they're off moving around the barges all of the time or dredges they have you know dredges people work on the dredge and then they have different barges that they pump on to they still attached to the dredge no matter what their duty requires them to be on other vessels for if there are no other questions thank you for your time I appreciate that will conclude the art